UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

REGINALD PENNINGTON,

       Petitioner,                            Case No. 1:12-CV-12224

v.                                         Honorable Thomas L. Ludington

STEVE RIVARD,

       Respondent,

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY
OR LEAVE TO APPEAL IN FORMA PAUPERIS**

      Petitioner Reginald Pennington, a state prisoner, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury in the Macomb County Circuit Court of one count of armed robbery and sentenced to 17–30 years in prison. The habeas corpus petition asserts five grounds for relief. For the reasons that follow, Petitioner's claims lack merit.

## I

      The robbery took place shortly before 5:00 a.m. The victim testified that she was robbed at knifepoint while working as a night cashier at a 7-Eleven in Center Line, Michigan. The victim described her assailant as "tall, big built, light black in color. He was wearing a leather jacket, and he had a hat on, and he had a mustache with a goatee." The victim identified Petitioner as the assailant.

      After the victim gave Petitioner the money from the cash register, Petitioner exited the store. The victim called 911. The police arrived within seconds of the victim's call.

Officer Daniel Merciez, the first officer to respond to the crime scene, saw one set of snowy footprints, besides his own, and did not see any other persons in the area at that time.

Officer Kevin Dailey and his partner responded to the call a short time later.  Officer Dailey testified that there was fresh snow on the ground and not many tracks at this time. Officers Dailey and his partner followed the tracks in the snow, which were the only set of tracks leading in the direction in which the victim indicated that the robber had fled. The track went south of the store, around it and through the alley located behind the store. The officers followed the tracks west onto the first street located north of Stephens, before losing the track at Van Dyke Avenue due to traffic. Officer Dailey requested other units to assist in the search while he went back to where he lost the track. Officer Dailey and his partner patrolled the area in their vehicle, looking for pedestrian traffic, but observed no persons out on the street at that time of the morning.

Officer Patrick Moore and his partner, Officer Horlock, also responded to the call.  They located one set of footprints on Stephens, on the west side of Van Dyke Avenue.  Officer Moore did not observe any pedestrians in the area at this time.  Officer Moore and his partner followed the footprints, which entered a trailer park and went between several trailers.  The footprints went up to a fence, appeared to go over it, and continued on the other side of the fence.  The footprints continued through the trailer park.  There was a wall surrounding a metal processing factory that had fresh snow on top of it, except for a spot where there was no snow, appearing to Officer Moore as though a person had gone over the wall at that spot.  Officer Moore went over the fence and continued to follow the track.

Officer Moore then met up with Officers Howe and Springer who had begun following the tracks in a different location, ahead of Officer Moore.   Officers Howe and Springer had followed the tracks from that point and discovered Petitioner prior to Officer Moore's arrival.

Officer Charles Springer testified that he discovered footprints in the fresh snow coming out of the yard for the Wico Metal Products.   The footprints went into a residential area, going over fences and through yards.   The footprints went up to a car but there were no tracks leading away from the car.   As the police approached the vehicle from opposite directions, Officer Springer heard Officer Haugh yell that the suspect was trying to get underneath the vehicle. Officer Haugh noticed a man who matched the description of the armed robber that had been provided by the victim, on his hands and knees, attempting to get underneath a vehicle parked in a driveway.   The subject, identified by Officer Springer as Petitioner, struggled with the officers before he was taken into custody.   Officer Haugh used his taser on Petitioner when he ignored the order to get on the ground, appearing as if he was going to flee. Officer Dailey followed the complete footprint track from the store to Petitioner's location for verification purposes.

Petitioner, as noted, was convicted by a jury and sentenced to 17–30 years.   The conviction and sentence were affirmed on appeal.   *People v. Pennington,* No. 292835 (Mich. Ct. App. Oct. 14, 2010).

Petitioner now seeks a writ of habeas corpus on five grounds.   First, Petitioner claims that the prosecutor violated Petitioner's due process right to a fair trial when he repeatedly told the jury that there was no rational way they could find reasonable doubt. Second, Petitioner claims that the trial court violated Petitioner's right to a fair trial by restraining him in shackles without any justification for the restraint.   Third, Petitioner claims that trial court did not comply with the requirements of Michigan Court Rule 6.005(D) with respect to Petitioner's requests for new

counsel or to represent himself.  Fourth, Petitioner claims that his trial counsel was ineffective in

not objecting to the prosecution's misconduct and accepting the court's finding that no juror had

seen Petitioner in shackles.  And fifth, Petitioner claims that he was denied his due process right

to be convicted on the basis of legally sufficient evidence.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs

this case, permits a federal court to issue the writ only if the state court decision on a federal

issue "was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §

2254(d)(1)–(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Mere error by the state court does not justify issuance of the writ; rather, the state court's

application of federal law "must have been objectively unreasonable."  *Wiggins v. Smith*, 539

U.S. 510, 520–21(2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes

omitted)).   Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ

of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct."); *see also*

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) ("The court gives complete deference to state

court findings of historical fact unless they are clearly erroneous.").

To be "contrary to" clearly established precedent, the Supreme Court explains, the state

court decision must have "applie[d] a rule that contradicts the governing law set forth in our

cases. . . .   A state-court decision will also be contrary to this Court's clearly established

precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams*, 529 U.S. at 405–06.

A state court decision involves an "unreasonable application" of clearly established precedent, the Court explains, "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  The Court cautions, however, that an unreasonable application of federal law is different from an incorrect application of federal law.

Unanimously emphasizing the limited nature of this review in *Harrington v. Richter*, 131 S. Ct. 770 (2011), the Court reiterated that AEDPA imposes a highly deferential standard for evaluating state-court rulings, writing: "A state court's determination that a [petitioner's] claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id*. at 785–86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

### III

### A

Petitioner first contends that he was deprived of a fair trial because of prosecutorial misconduct.  "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (*citing Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643–45 (1974); *see also Caldwell v. Russell*, 181 F.3d 731, 736

(6th Cir. 1999). The determination of whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997) (*quoting Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting *Harrington*, 131 S. Ct. at 786–87).

Petitioner contends that the prosecutor committed misconduct with the following remarks in closing argument:

> Now, let's suspend our disbelief for a minute and think of what is the possibility. I'd like to go back for a minute from the time of the Defendant's arrest. What possibility is there that the Defendant, if he is not the perpetrator of the armed robbery, decides at 5:30 in the morning to hide in, under a car at 7059 Paige. What are the possibilities? Why would somebody do that?

> I can't think of anything. Nothing comes to my mind. Would you go out at five in the morning and decide to, first of all, go through a hole in a fence, jump over several fences and other backyards and then hide under a car at five am in the morning? 5:30 am in the morning? I think the only reasonable conclusion is you would do that if you perpetrated an armed robbery 40 minutes earlier at the 7-Eleven. That is the only reasonable conclusion I can draw from that.

\* \* \*

-6-

>Now, do foot prints travel to a location, a person disappears and then another person reappears under the car or attempting to crawl under a car?  Unless you have like a transporter from Star Trek, no, that doesn't happen.  Unless Scottie beams you up from that location where the foot print ended, that doesn't happen, at least not yet not in our world.
>
>So I think beyond a reasonable doubt the foot prints going down Memphis, parallel to Paige and ending up where the Defendant is arrested, those are the Defendant's foot prints.  There's no reasonable possibility, reasonable probability that those foot prints belong to anybody else.
>
>                    * * *
>
>Now if you think there is any reasonable possibility of [the tracks found on the east and west side of Van Dyke being made by different people], consider this: It is 5:00 to 5:30 in the morning, there is nobody else out, and there is [sic] no other foot prints.
>
>So really in order to come up with a reasonable doubt in your mind that it was not the Defendant that committed the armed robbery, you really have to go through some contortions. You kind of have to engage in unreasonable doubt to find any reasonable doubt that it was not the Defendant that perpetrated the armed robbery.

These comments do not constitute prosecutorial misconduct.  A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof."  *Caldwell*, 181 F.3d at 737.  But a prosecutor may argue that the jury should arrive at a particular conclusion based upon the evidence.  *Id.*

In the present case, the prosecutor's arguments were made to summarize the evidence. Moreover, when viewed in context, the prosecutor was not expressing a personal opinion about Petitioner's guilt but was instead asking the jurors to find Petitioner guilty based on the evidence and the reasonable inferences that could be drawn from that evidence.  Because the prosecutor did not intimate a personal opinion as to the petitioner's guilt, the prosecutor's statements did not

constitute misconduct. *Sherrill,* 388 F.3d at 538. In addition, because the prosecutor's remarks were only a small part of the larger argument that summarized the evidence and the trial judge informed the jury that the lawyers' arguments were not evidence, federal habeas relief is not warranted. *Byrd v. Collins*, 209 F.3d 486, 532-33 (6th Cir. 2000).

Petitioner further claims that the prosecutor's sarcastic remarks in his closing argument improperly denigrated his misidentification defense.

Petitioner is not entitled to habeas relief on his claim that the prosecutor improperly denigrated the defense. *See Henley v. Cason,* 154 Fed. App'x. 445, 447 (6th Cir. 2005) (unpublished).  The prosecutor's comments were not so incendiary so as to inflame the jury's passion or distract them from determining Petitioner's guilt or innocence.  Moreover, when combined with the instruction from the trial judge that the attorneys' arguments, questions, and statements were not evidence, the prosecutor's comments did not render the entire trial fundamentally unfair. Petitioner is not entitled to habeas relief on his first claim.

## B

Petitioner next claims that he was deprived of a fair trial because he was improperly shackled through a portion of the trial.

In *Deck v. Missouri*, 544 U.S. 622, 629 (2005), the U.S. Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."

*Deck*, however, "concerned only visible restraints at trial."  *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008).  Here, both the trial court judge and the Michigan Court of

Appeals found that Petitioner had failed to establish that his leg restraints were visible to the jurors.

In considering federal habeas petitions, a federal district court must presume that the state court factual determinations were correct; a habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). This presumption of correctness extends to factual findings made by a state appellate court on the basis of their review of trial court records. *See Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010).

Here, the factual finding by the trial court judge and the Michigan Court of Appeals that Petitioner's leg shackles were not visible to the jurors must be presumed to be accurate unless Petitioner can show that it is clearly erroneous. *Earhart v. Konteh,* 589 F.3d 337, 349 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)). Petitioner does not present evidence that his leg shackles were visible to the jurors. His claim lacks merit.

## C

Petitioner next contends that the judge violated his Sixth Amendment rights by denying his mid-trial request for new counsel or to represent himself.

Trial commenced on April 7, 2009. On the second day of trial, defense counsel informed the court that Petitioner was unhappy with his representation, specifically because counsel failed to ask the victim questions that Petitioner wanted asked, even though counsel thought that he had asked those questions. Counsel informed the judge that Petitioner "asked that the proceedings be stopped, and I assume he wants a new attorney." The trial court denied the request for substitute counsel, explaining:

> [T]his matter has been set for trial for quite some time. We are in the middle of trial. The court is well acquainted with [defense counsel] and his considerable

ability and excellent reputation as a criminal defense attorney.  In the Court's mind he just conducted a very thorough and concise interrogation, cross-examination I should say of a particular witness.

We now have [defense counsel's] observation that his client has propounded questions that in [counsel's] opinion are simply redundant and cumulative as to what was already asked.  There has been no request actually to recall the witness, which is a remedy that we have available if the defense counsel wishes.

After all that, Defendant has made a request for new counsel.  That is inappropriate, ill advised and not based on fact.  So the Court will deny that request.  We will continue with trial.

On the next day of trial, after the prosecution had presented the majority of its case, defense counsel informed the judge that Petitioner wished to represent himself with his attorney remaining as advisory counsel.  The judge advised Petitioner that he had a right to represent himself and that the judge would allow it. The judge, however, cautioned Petitioner about doing so and informed him that his current defense attorney was experienced and reputable. Petitioner withdrew his request for self-representation, stating on the record that it was his choice to do so, after reflection.

Petitioner is not entitled to habeas relief based upon the trial judge's failure to appoint substitute counsel for him.  The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (*citing Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice."  *Id.* (*quoting Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144

(2006) (*quoting Caplin & Drysdale*, 491 U.S. at 624–25).  However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra*, 4 F.3d at 1351 (*citing to Wheat v. United States*, 486 U.S. 153, 159 (1988)). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984).  And the right to counsel of choice may not be used to unreasonably delay a trial.  *See Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981).

"A defendant is required to show good cause for a request to substitute counsel and to do so in a timely manner." *See United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999).  In determining whether a court abuses its discretion in denying a motion for substitute counsel, a reviewing court should consider the timeliness of the motion, the adequacy of the trial court's inquiry into the defendant's complaint, whether the conflict between the attorney and the client is so significant that it resulted in a total lack of communication which prevented an adequate defense, and a balancing of these factors with "the public's interest in the prompt and efficient administration of justice." *Id.* (citing *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996)).

Here, Petitioner's request for a continuance to obtain new counsel —  made on the second day of trial, after the prosecutor had presented several witnesses — was untimely.  The trial court judge could have simply denied Petitioner's request for substitute counsel for that reason alone. *United States v. Sullivan,* 431 F.3d 976, 980 (6th Cir. 2005).

Moreover, the trial judge sufficiently inquired about Petitioner's contention that his attorney was ineffective.  In light of the fact that the trial judge discussed the alleged conflict

with Petitioner and his counsel about the extent of counsel's cross-examination, there was no abuse of discretion in denying Petitioner's request for new counsel. *See United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009).

And finally, Petitioner has not shown that he was prejudiced by the failure of the trial court to substitute counsel, in light of the fact that he received effective representation during trial. Petitioner is not entitled to habeas relief on his substitution of counsel claim.

Petitioner's self-representation claim likewise lacks merit for several reasons. As a threshold matter, criminal defendants have a constitutional right to conduct their own defense at trial if they voluntarily and intelligently elect to do so. *Faretta v. California*, 422 U.S. 806, 807 (1975). But the right to self-representation is not absolute.

First, defendant's request for self-representation must be made clearly and unequivocally. *Id*. at 835; *see also United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994) ("To assert the right of self-representation, a defendant must do so unequivocally."). The assertion of the right to self-representation necessarily involves a waiver of the constitutional right to counsel. *United States v. Cromer*, 389 F.3d 662, 682–83 (6th Cir. 2004). Given the importance of the right to counsel, the Sixth Circuit requires "clear and unequivocal assertion of a defendant's right to self-representation before his right to counsel may be deemed waived." *Id.* And defendant does not have a constitutional right to hybrid representation. *Id.* at 681 n.12.

Additionally, a defendant's invocation of his right of self-representation must be timely made. *Moore v. Haviland,* 531 F.3d 393, 403 (6th Cir. 2008). In *Robards v. Rees*, 789 F.2d 379, 383 (6th Cir.1986), for example, the state trial court did not err in denying the defendant's motion to represent himself when the motion was not made until the first day of trial and after the clerk had called the roll of jurors. *Id.* The Sixth Circuit explained that the defendant's

request for self-representation, if honored by the trial court, "would have impermissibly delayed the commencement of the trial." *Id.* at 384.

Here, Petitioner did not invoke his right to self-representation clearly and unequivocally. Instead, he asked that his trial counsel remain as advisory counsel. Moreover, he did not make his request in a timely manner. He did not make the request until the third day of trial.

Finally, Petitioner's claim lacks merit because of his own conduct during the trial. There, after discussing the matter with the trial judge, Petitioner agreed to allow counsel to represent him during trial and sentencing. He did not make any subsequent demands to represent himself. "Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). Because Petitioner never again asserted his right to self-representation, it must be presumed that he agreed to counsel continuing to represent him.

Finally, to the extent that Petitioner is claiming that the trial court violated the provisions of Michigan Court Rule 6.005(D), he is not be entitled to habeas relief. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

**D**

Petitioner next alleges that he was deprived of the effective assistance of trial counsel. To show he was denied the effective assistance of counsel under federal constitutional standards, a petitioner must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not

-13-

functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Id*. at 689.  Second, Petitioner must show that such performance prejudiced his defense.  *Id*.  To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  The test is a demanding one.  "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390–91 (2009).

More importantly, on habeas review, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted) (*quoting Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 131 S. Ct. at 785.

Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner.  *Knowles*, 556 U.S. at 123.  This means that on

habeas review of a state court conviction "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland*'s high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Finally, "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" four years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Here, Petitioner first contends that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct in this case.  As discussed above, the prosecutor did not commit misconduct and the prosecutor's argument did not deprive Petitioner of a fundamentally fair trial.  Accordingly, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks.

Petitioner next contends that trial counsel was ineffective for stipulating that the jury did not see Petitioner in leg shackles.  As discussed above, Petitioner has not shown that he was prejudiced by being shackled.  There is no evidence that the jury saw the leg shackles. Petitioner is not entitled to habeas relief on his fourth claim.

**E**

In his final claim, Petitioner contends that there was insufficient evidence to establish his identity as the perpetrator of the armed robbery.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether

the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry asks whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 318–19 (internal citation and footnote omitted) (emphasis in the original).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Here, a rational trier of fact could have found the essential elements of the crime of armed robbery had been proved beyond a reasonable doubt.  The victim positively identified Petitioner as her assailant.  In addition, there was strong circumstantial evidence which linked Petitioner to the crime.  The police testified that they followed a distinctive set of footprints from the 7-11 to the trailer park where Petitioner was discovered attempting to hide under a motor vehicle.  Moreover, when the police discovered Petitioner, they observed him attempting to hide underneath a car.  There was also evidence that Petitioner scuffled with the police and refused to follow their orders.  Resisting arrest is further evidence of a defendant's consciousness of guilt.

## IV

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003).  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id.* at 336–37.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Here Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case.  The Court further concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

## V

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED.**

Dated: June 7, 2013

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

-17-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means upon Reginald Pennington, #203807 at St. Louis Correctional Facility, 8585 N. Croswell Road, St. Louis, MI 48880 by first class U.S. mail on June 7, 2013

s/Tracy A. Jacobs
TRACY A. JACOBS

-18-